## JOHN BALLINGER

*v.*

## BENJAMIN L. T. BOURLAND *et al.*

| 87 | 513 |
| 133 | 205 |
| 87 | 513 |
| 145 | 426 |

1. USURY—*charge of commission by agent procuring loan.* Where an agent procuring a loan of money for a party, charged and received from the borrower five per cent of the amount, and $100 for going to Chicago and procuring a release of an incumbrance, the party making the loan having no knowledge of this arrangement and deriving no benefit from it, it was *held,* that usury could not be predicated of the transaction.

2. DEED OF TRUST—*sale by trustee, whether on credit.* Where a party gave a deed of trust to secure a sum of money borrowed of an insurance company, with a power of sale, for cash, on default of payment, and before the trustee's sale the party who afterwards purchased applied to the company for the loan of the same sum for which the deed of trust was given, and had the promise of it, and upon his purchase of the land gave his note to the company for the amount of the loan, paying the balance due the company, by way of interest,

in money, it was *held*, that the sale could not be objected to as not being made for cash, the arrangement not being to the injury of the mortgagor.

3. SAME—*remedy is at law to reach surplus proceeds of sale.* Where property sold under a trust deed produces more than is required to discharge the debt secured and reasonable expenses of the sale, which the trustee refuses to pay over to the party entitled to it, the remedy for its recovery is at law and not in equity.

4. SAME—*who entitled to overplus of sale money.* Where A, after the execution of a deed of trust on land, conveyed his equity of redemption to B, to secure a loan of $2000, and afterwards the title thus conveyed was extinguished by a foreclosure of the trust deed, the property selling for $1000 more than was due on the trust deed, which the trustee claimed for making the sale, it was *held*, that if this overplus was improperly retained, it should be paid to B, as the holder of the equity of redemption, he not having been repaid his loan by A.

5. MORTGAGE—*right to reconveyance when deed is a security, and when lost.* Where a party conveys land as a mortgagor, to secure the repayment of money borrowed by him, taking back a bond for a reconveyance on payment, if the title thus conveyed becomes extinguished and lost by sale under a prior deed of trust given by him, and his grantee acquires the title, such mortgagor can not maintain a bill to redeem and for a reconveyance from his grantee.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

On the 23d day of November, 1868, John Ballinger and wife made their deed of trust of eight hundred acres of land, in Livingston county, in this State, to Benjamin L. T. Bourland, to secure the payment of $17,000, borrowed money, to the Ætna Life Insurance Company, at Hartford, Conn., on the 1st day of January, 1874, with ten per cent per annum interest, payable on the 1st day of January in each year.

Default having been made in payment of the interest due January 1, 1871, and there being a provision in the deed making the principal due in such contingency, on March 23, 1871, Bourland, the trustee, after notice, in pursuance of the terms of the trust deed, sold the lands at public sale for the sum of $20,748, and Samuel Crumpton became the purchaser, to whom Bourland executed a trustee's deed of the lands.

Ballinger had, before, on the 20th of May, 1870, executed

to William W. Crumpton, a brother of Samuel Crumpton, a quitclaim deed of the lands, taking back from him a bond for their reconveyance upon the payment of $3744 on or before January 1, 1871.

Ballinger filed his bill in chancery, to the October term, 1871, of the Marshall circuit court, against Bourland, the Ætna Life Insurance Company, and Samuel Crumpton, to set aside the trustee's sale made by Bourland to Samuel Crumpton, on various grounds—that Bourland made the sale in violation of his previous agreement to postpone it; that the notice was insufficient; that the sale was made on credit, instead of for cash, as the trust deed required; that there was a conspiracy between Bourland and Crumpton to cheat complainant out of his lands; that complainant supposed the trust deed to be an ordinary mortgage, and that there was usury in the loan from the Ætna Insurance Company.

The respective defendants answered, denying the charges of the bill. Afterward, September 15, 1874, the bill was amended, making Edith Ballinger, wife of John Ballinger, a co-complainant with him, and making William W. Crumpton a party defendant.

The amendment set up that the premises were the homestead of the complainant; that the contents of the trust deed were not made known to the wife by the acknowledging officer, nor did he examine her in respect thereto as required by law; that she supposed the trust deed to be an ordinary mortgage, and would never have signed the same had she known its purport; that the quitclaim deed of May 20, 1870, to William W. Crumpton, was a security to secure the payment of an usurious loan of money, and asks to redeem upon payment of the amount legally due, and for an account against the defendants.

William W. Crumpton answered, denying the charges of the bill, and afterward, upon proofs taken on final hearing, the circuit court dismissed the bill. The complainant, John Ballinger, appeals.

Messrs. CRATTY BROS., for the appellant.

Messrs. PILLSBURY & LAWRENCE, and Mr. H. W. WELLS, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

All the foundation which there appears to be for the charge of usury in the loan of $17,000 from the insurance company is, that the loan was obtained by Ballinger, through the agency of Bourland, who resided at Peoria, in this State, and that Bourland charged Ballinger a commission of five per cent on the amount for effecting the loan, and $100 for going to Chicago and procuring there a release of the premises from a prior mortgage incumbrance upon them of $16,000, which charges Ballinger paid to Bourland. There appears but the simple transaction itself, without any pretense, by the testimony, that the insurance company was in any way privy to the receiving of the money by Bourland, or that the agreement therefor was with the knowledge or authority of the insurance company, or that it derived any benefit therefrom.

It seems to be abundantly settled by the authorities that usury is not to be predicated of a transaction of such a character. *Condit* v. *Baldwin,* 21 Barb. 181, S. C. 21 N. Y. 224; *Bell* v. *Day,* 32 id. 165; *Muir* v. *The Newark Savings Institution,* 16 N. J. Eq. R. 537; *Conover* v. *Van Metar,* 18 id. 481; *Rogers* v. *Buckingham,* 33 Conn. 81; Tyler on Usury, 156.

It appears that, before the trustee sale was made, Samuel Crumpton made application to the Ætna Life Insurance Company for a loan of $17,000, and had the promise of it, provided he could give ample security. After the sale, Crumpton gave his note to the company for $17,000, secured in its payment by a mortgage upon the lands, and paid the balance of the purchase money ($3784) in cash, at the time of the sale.

Appellant contends that this transaction constitutes a sale on credit. We fail to perceive wherein it is objectionable as not being a sale for cash, as required by the trust deed. Any

such arrangement tends to benefit, not injure, the mortgagor. In *Strother* v. *Law*, 54 Ill. 414, it was held, that if the mortgagee, upon such a sale, choose to give credit for the amount due him, it would not be inconsistent with the terms of the power to sell for cash. To the same effect is *Burr* v. *Borden*, 61 Ill. 391.

All the allegations of the bill in impeachment of the trustee sale, in other respects, we regard as wholly unsupported by the proofs, and that it is unimportant to give them further remark.

That sale, then, not being invalidated, a perfect title was acquired thereunder by Samuel Crumpton, the purchaser thereat, who subsequently conveyed by quitclaim deed to William W. Crumpton. This seems to render unnecessary any investigation of the transaction between Ballinger and William W. Crumpton of May 20, 1870, when the former made a quitclaim deed to the latter of the equity of redemption in the land; for, should such quitclaim deed, and bond from Crumpton, given at the same time, for a reconveyance on payment to the latter of the sum of $3744 on or before January 1, 1871, be found to be, as claimed by Ballinger, a security for a loan of $2000 at an usurious rate of interest, we do not perceive that Ballinger could derive any benefit thereby, as the equity of redemption so quitclaimed and agreed to be reconveyed has been foreclosed and extinguished by the subsequent trustee sale on March 23, 1871. This would so seem, unless it be otherwise as to any surplus there may be under the trustee sale.

And in this connection may be considered the question of accounting by Bourland, the trustee.

Bourland retained from the proceeds of the sale under the trust deed $1000 as compensation to himself in making the sale. On the one hand, it is contended that this is not provided for in the trust deed, and on the other, that it is, by the clause, for the payment of "all reasonable expenses." The propriety of this charge may admit of question. We do not feel called upon to pass upon it. If the trustee has improp-

erly retained in his hands any of the proceeds of the sale which he should have paid over, there will be a remedy at law to recover the same. The order dismissing the bill is expressly made without prejudice to the right of complainant in any legal proceeding.

We think, however, that any such surplus of proceeds of the sale should be paid over to Crumpton as the holder, at the time, of the equity of redemption.

There is no pretense that Ballinger ever paid to Crumpton any part of the $2000 which the former claims as having been borrowed and secured upon the equity of redemption; nor, as we understand, that Crumpton received any rents and profits from the premises previous to their sale under the trust deed.

The decree dismissing the bill is affirmed.

*Decree affirmed.*

Mr. Justice Walker: I am unable to concur in the conclusion reached by the court in this case.