# WILLIAM H. HOYT *et al.*

## *v.*

# PAWTUCKET INSTITUTION FOR SAVINGS *et al.*

*Filed at Ottawa June 13, 1884.*

1. USURY—*interest in advance.* The taking of the legal rate of interest in advance is not regarded as usurious.

2. SAME—*of commissions to loan agents.* Brokers negotiating loans of other people's money may charge the borrower commissions, without thereby making a loan at the full rate of legal interest usurious, where there is no arrangement with the lender that commissions shall be charged by the agent.

3. SALE UNDER TRUST DEED—*notice thereof—sufficiency, as showing amount due.* A notice of sale under a deed of trust contained this clause: "Default has been made in the payment of part of the interest note due November 22, 1876, and the whole of the interest note due May 22, 1877; and whereas, the legal holder of said note and unpaid interest coupons (the Pawtucket Institution for Savings) has thereupon exercised its option of declaring the whole principal sum, and the interest thereon, due and payable; and whereas, default has been made in the payment of the principal and interest so become due and payable," etc.: *Held,* that the notice showed, with reasonable certainty, that the amount claimed to be due was the principal sum, the interest note due May 22, 1877, and part of the interest note due November 22, 1876, and stated substantially the amount due. As to the part due on the latter note the notice was indefinite, but, considering the amounts involved, (the principal being $5000, and the interest notes $250,) and the smallness of the sum due on such interest note, the notice was held substantially good.

4. SAME—*inadequacy of price—whether so regarded.* In August, 1877, real estate was sold under a deed of trust for $5250, which the witnesses placed in value at $15,000 at that time, which it appeared was much more than the property could then have been sold for, there being no market for the property at the latter price, and no demand for such property; and it appeared that in August, 1881, when the prices had advanced, it was sold for only $12,000, and that at the time of the sale there was some $2000 of unpaid taxes against the land: *Held,* that there was no such gross inadequacy of price as should lend much additional strength to any alleged irregularity in the sale.

5. LACHES—*as a bar to bill to set aside a sale under a trust deed.* A delay of four years in filing a bill by the former owner to set aside a sale of his real estate under a deed of trust, on the ground of alleged irregularities and inadequacy of price, when he knew of such sale shortly after it was made,

and neglected to redeem the property by paying the sum due from him, such privilege having been offered him by the purchaser, and he allowed the taxes to accumulate against the property to a large amount, was held such *laches* as to bar the relief sought. A party, to avoid a sale of his land for mere irregularities, must act with promptness, and not wait to speculate upon the chances of a rise in the value of the property.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. J. I. & F. I. BENNETT, and Mr. R. H. PATTON, for the plaintiffs in error:

If Taylor was the agent of the bank in making the loan,— and that he was seems clear,—then the payment of $250 to him above the legal rate of interest constitutes usury. *Payne* v. *Newcomb*, 100 Ill. 611; *Rogers* v. *Buckingham*, 33 Conn. 81; *Condit* v. *Baldwin*, 21 N. Y. 219; *Bell* v. *Day*, 32 id. 165; Tyler on Usury, 156; *Manning* v. *Young*, 28 N. J. 568; *Gray* v. *Van Blarcum*, 29 id. 454.

The cases of *Ballinger* v. *Bourland*, 87 Ill. 513; *Phillips* v. *Roberts*, 90 id. 492, and *Boylston* v. *Bain*, id. 283, cited, would be in point if the institution had no knowledge of Taylor's taking a bonus. The taking of usury under a mistaken notion that one has a right to take it, will make it none the less usurious. *Marine Bank* v. *Butts*, 9 Mass. 49; *Bank of Salina* v. *Alvord*, 31 N. Y. 473; *Childers* v. *Deane*, 4 Rand. 406.

*Laches,* in order to be imputed to a litigant, must have two elements concurring: First, the party invoking it should be injured; and second, the party against whom it is invoked should be in default or in the wrong as against the party invoking it. *Mills* v. *Lockwood*, 42 Ill. 118; *Wilson* v. *Byers*, 77 id. 84; *Harper et al.* v. *Ely et al.* 56 id. 196; *Tilton* v. *Stein*, 87 id. 122; *Gibbons et al.* v. *Hoag*, 95 id. 69; *Musham* v. *Musham*, 87 id. 80; *Ryder et al.* v. *Emrich et al.* 104 id. 470; *Thompson* v. *Scott*, 1 Bradw. 641; *Yeaton* v. *Yeaton*, 4 id. 579; *Beveridge* v. *Hewitt*, 8 id. 467; *Castner* v. *Walrod*,

83 Ill. 171; *Kellogg* v. *Wilson*, 89 id. 357; *Maher* v. *Farwell*, 97 id. 56; *Oakley* v. *Hurlbut*, 100 id. 204.

The undisturbed possession of Hoyt in the property is a sufficient excuse for his not instituting proceedings to avoid the sale sooner; and the same may be said in respect to the negotiations for an arrangement of the matter in difference.

Mr. Holdridge O. Collins, for the defendants in error:

Interest paid in advance is not usurious. *McGill* v. *Ware*, 4 Scam. 21; *Goodrich* v. *Reynolds*, 31 Ill. 490.

The $250 commissions was received by Taylor as a broker, and not as the agent of the institution for savings. Brokers negotiating loans of other people's money have a right to charge commissions. *Phillips* v. *Roberts*, 90 Ill. 492; *Boylston* v. *Bain*, id. 283; *Ballinger* v. *Bourland*, 87 id. 513.

A statutory requirement that the notice shall state the amount claimed to be due at the time of the first publication, is sufficiently met by a statement of the amount claimed to be due at a certain prior date, etc. Jones on Mortgages, sec. 1855; *Judd* v. *O'Brien*, 21 N. Y. 186.

Not void by naming a larger amount than due or can be due. *Murray* v. *Sanborn*, 62 Barb. 223.

The amount due must be stated with substantial accuracy. Perry on Trusts, sec. 602 s.

Four years' delay has been frequently held by this court to bar the right of redemption. *Hamilton* v. *Lubukee*, 51 Ill. 415; *Bush* v. *Sherman*, 80 id. 160; *McHany* v. *Schenk*, 88 id. 357.

Five and six years' delay while valuable real estate is advancing in value, is *laches*. *Cunningham* v. *Fithian*, 2 Gilm. 650; *Walsh* v. *Brennan*, 52 Ill. 123.

Mr. Justice Sheldon delivered the opinion of the Court:

This was a bill in chancery, filed in the Superior Court of Cook county on September 5, 1881, to set aside a sale of real

property, made August 16, 1877, under a trust deed given by William M. Hoyt and wife to the Pawtucket Institution for Savings, on May 22, 1876. On May 22, 1871, Hoyt borrowed from the Savings Institution $5000, for five years, agreeing to pay ten per cent interest per annum, payable semi-annually, in advance. On May 26, 1876, Hoyt obtained a renewal of the loan, at nine per cent interest, payable semi-annually, in advance. By the terms of the trust deed any default in the payment of interest or taxes made the principal sum at once due and payable, at the option of the holder of the note therefor. On August 16, 1877, the trustee in the trust deed made sale of the premises to Charles Moies, president of the Pawtucket Institution for Savings, for $5250, and executed to him a deed therefor. The trustee's deed, as also the notice of sale, recites default in the payment of part of the interest note due on the 22d day of November, 1876, and the whole of the interest note due on the 22d day of May, 1877, as the ground for the sale under the trust deed, the notice stating that the holder of the unpaid notes had exercised its option and declared the whole principal sum due and payable. On June 21, 1881, the Pawtucket Institution for Savings made a contract with A. T. Ewing for a sale to him of the property, and executed to him a warranty deed therefor, dated August 4, 1881, for $12,000. *Laches* was set up in the answer of the Pawtucket Institution for Savings. On final hearing, upon proofs taken, the court below dismissed the bill. The complainant brings this writ of error.

The bill alleged the following grounds for setting aside the sale: First, that the notes and trust deed were executed for $5000, but that Hoyt received only $4500,—that $250 was kept out for interest in advance, and $250 was retained as commissions by Taylor, the agent of the Pawtucket Institution for Savings, wherein it is claimed there was usury; second, that the interest notes due May 22 and November 22, 1876, were paid, and that the Institution for Savings then

agreed to accept interest thereafter not in advance, and there-
fore no interest was due until November 22, 1877; third,
that the notice of sale did not contain the amount due; and
fourth, that $5250 bid at the sale was an inadequate price.

By the terms of the notes and trust deeds the interest
was payable in advance. Interest paid in advance is not
usurious. *McGill* v. *Ware*, 4 Scam. 21; *Goodrich* v. *Reynolds*,
31 Ill. 490.

The Pawtucket Institution for Savings was an institution
in the State of Rhode Island. Taylor was a loan broker in
Chicago. Taylor sent on from Chicago to the Institution for
Savings the application for the loan, which the institution
accepted, and paid the money by a draft for $4750, payable
to the order of Hoyt, retaining from the $5000 (the amount
loaned) $250, a half year's interest, in advance. Taylor
charged Hoyt $250 commissions for securing the loan, so
that the net sum which Hoyt got was but $4500. This com-
mission received by Taylor was not from any arrangement
with the Institution for Savings, or with its knowledge. It
got no part of the commission, and received no more than
ten per cent interest on the money loaned. Brokers nego-
tiating loans of other people's money may charge the borrower
commissions, without thereby making a loan at the full rate
of legal interest usurious. *Ballinger* v. *Bourland*, 87 Ill. 513;
*Phillips* v. *Roberts*, 90 id. 492; *Boylston* v. *Bain*, id. 283.

*Payne* v. *Newcomb*, 100 Ill. 611, was not intended to decide
anything to the contrary, as seems to be supposed by counsel
for plaintiffs in error. In the latter case there was an express
understanding between Stevens, the lender, and Newcomb,
his agent, that Newcomb should get his commissions from
the borrower. The court there says, in its opinion: "In
effect the transaction is the same as had the loan been made
at fifteen per cent, and ten had been paid to Stevens and
five to Newcomb. This was the result which, by the parties,
was intended before the inception of the transaction. It was

in pursuance of an arrangement of the lender and his agent."
There is nothing of that kind appearing in the present case.
It is the case of a person at a distance receiving, through a
broker residing here, an application for a loan at the full
legal rate of interest, and accepting the application and send-
ing on the money to be loaned as applied for, nothing what-
ever being said upon the subject of commissions. It was not,
it is true, a solitary instance. Taylor was in the business of
receiving, here, applications for loans, and sending them on
to persons living abroad, for acceptance or rejection, and
when applications were accepted he charged the applicants,
here, commissions, but without any understanding with the
lenders, and in the course of such business he forwarded,
among others, to this Institution for Savings, a large number
of applications for loans besides the one in this case, many
of which were accepted and others rejected. The Institution
for Savings has never received, or agreed to receive, more
than the legal rate of interest upon this loan, and whatever
in addition thereto Hoyt has paid to Taylor has been in
compensation for the services of the latter in procuring the
loan for Hoyt, which was something entirely between them-
selves, independent of the Institution for Savings, with which
the latter had no connection. We fail to discover anything
of usury in the transaction.

The interest, by the terms of the notes, was payable semi--
annually, in advance. The proof fails to establish the alle-
gation of the bill that after the payment of the interest note
due November 22, 1876, the Institution for Savings agreed
with Hoyt that it would accept interest during the remainder
of the time semi-annually not in advance. It is this alleged
agreement, and the claimed over-payment for usurious inter-
est in commissions on the loan in 1871, that the bill relies
upon as showing there was no semi-annual interest payment
due on May 22, 1877,—that it had either been extended by
said alleged agreement to November 22, 1877, or had been

paid by such over-payment of usurious interest, as claimed. We find failure in either of these respects to show that the interest note payable May 22, 1877, was not due at the time the sale was made. Nor does the proof show that the whole of the interest note due November 22, 1876, was paid, as the bill alleges. We think the fair showing by the proof is, that on the day of the publication of notice of the sale, all of the May 22, 1877, coupon was due, and that a small balance remained unpaid on that of November 22, 1876.

As to the point that the notice of sale did not contain the amount due, the statement in that respect in the notice is, that "default has been made in the payment of part of the interest note due November 22, 1876, and the whole of the interest note due May 22, 1877; and whereas, the legal holder of said note and unpaid interest coupons (the Pawtucket Institution for Savings) has thereupon exercised its option of declaring the whole principal sum, and the interest thereon, due and payable; and whereas, default has been made in the payment of the principal and interest so become due and payable," etc. We think it appears from the notice, with reasonable certainty, that the amount claimed to be due is the principal sum, the interest note due May 22, 1877, and part of the interest note due November 22, 1876. There is an indefiniteness in the latter respect in stating as to what part of the interest note due November 22, 1876, there has been default of payment. But considering the amounts involved,—the smallness of the interest note compared with the principal sum,—we think the notice in this respect may be said to state substantially the amount due. The amount of the debt must be stated with substantial accuracy. Perry on Trusts, sec. 602 s.

We see no such grossness of inadequacy in price as should lend much additional strength to any alleged irregularity in the sale. What proof there is in the record upon the subject would place the valuation of the property at the time it was

sold, at about $15,000. But we are satisfied from the evidence that was much more than the property could have been sold for at that time. The witnesses say the real estate market was "flat" at that time; that there was no market for the property at that price at the time; that this property was not marketable; that there was no demand for such property. In August, 1881, when there had been great appreciation in prices over those in 1877, the property sold for but $12,000. And at the time of the sale, too, under the trust deed, there were some $2000 unpaid taxes against the land. The non-payment of taxes was not assigned in the notice of sale as a ground therefor, yet it seems to have been a reason for making the sale.

But were the alleged irregularities in the sale established by proof, we are of opinion that the *laches* which appears in this case is too great to entitle the complainant to maintain this bill. The sale took place August 16, 1877. Hoyt knew that the papers had been placed in the hands of attorneys for foreclosure. On June 23, 1877, he paid to such attorneys $102 on account of interest. Publication of notice of sale was made on June 23. Admittedly, as early as October or November, 1877, Hoyt knew that the sale had been made, yet he does not file his bill until September 5, 1881. The excuse made for this delay is, that Hoyt had, since the sale, been in the possession of the premises, and he delayed as he did, in filing his bill, because he hoped the Pawtucket Institution for Savings would have accepted the amount justly due it, with interest, and set aside the sale, and that said institution had, from time to time, held out inducements to him, and led him to believe they would accept the amount of said indebtedness. All that the proof shows in this regard is, that on November 3, 1879, Hoyt wrote and sent to the Institution for Savings a letter, saying that he would like to make some arrangement whereby he could again obtain perfect title to the property, the letter complaining of the action

of the attorneys in foreclosing without notice to him, stating there was no interest due at the time under an express understanding with them, and that when the last interest payment was made it was agreed that instead of paying interest in advance he might pay at the expiration of six months, and saying if it could be arranged amicably he would like to hear from them in the matter. The following letter was sent in reply:

"Pawtucket, R. I., *November 6, 1879.*

"W. H. Hoyt:

"*Dear Sir*—Yours of the 3d inst. at hand. We will write to our agent, Mr. Hurlbut, in regard to the subject matter of your letter. You call on him. We are willing and ready to dispose of our estates in Chicago if our claims are paid. We are also willing to retain on mortgage a fair proportion of the purchase money.

"Very respectfully,

Thomas Moies, *Treasurer.*"

Upon the receipt of that letter, Hoyt, on November 10, 1879, had a conversation with Hurlbut, wherein Hurlbut told him that the Pawtucket institution would accept the money that the property had cost it, as it did not want it. Hurlbut states that was the substance of the conversation, and was the fact,—that no offers were made of payment of money. The above is all that the proof shows as having in any way taken place between Hoyt and the Pawtucket institution, between the time of the sale (August 16, 1876,) and the filing of the bill,—September 5, 1881. Although Hoyt states there were other communications between them upon the subject, this is denied by the Pawtucket institution and by Hurlbut. The Pawtucket institution was left to pay the taxes on the property, and paid upwards of $3000 of taxes subsequent to the sale. A fair opportunity was offered to Hoyt to come in and redeem by paying what the property had sold for, or even a part of it, and securing the remainder by mortgage

on the same premises.  But he did not avail himself of the offer.  His conduct would indicate that he did not regard it for his interest to redeem in the then condition of real estate values, but when, from the lapse of time, the appreciation of prices made it a desirable object to do so, he then moved. to have the sale set aside.  In the case of such avoidable sales there should not be afforded the opportunity of speculation on chances.  It is not permissible for a party to lie by and await events, and have the power, at any time in the future, to let the sale stand, or avoid it, according as it may be found then for his interest to do.  There should be promptitude of action within a reasonable time.  (*Hamilton* v. *Lubukee,* 51 Ill. 415; *Bush* v. *Sherman,* 80 id. 160; *McHany* v. *Schenk,* 88 id. 357.)  In *Bush* v. *Sherman,*—a case of such a sale of property in Chicago,—a delay of more than four years in filing a bill was held too late, although the mortgagor was, a large portion of the time, in the rebel lines when there was no intercourse between the two sections of the Union.

The proof shows no sufficient excuse for the delay in the present case, and we regard it as too great.

The decree dismissing the bill will be affirmed.

*Decree affirmed.*

SCOTT, Ch. J., and WALKER, J.: We are unable to concur in the doctrine and conclusion announced by this opinion.

Mr. JUSTICE SCHOLFIELD: My first impression of this case was in favor of reversing the decree below.  On further investigation I am satisfied to affirm the decree on the last ground expressed in the opinion,—*laches* in filing the bill.  In no view was the sale absolutely void.  The most favorable view, under the facts, to plaintiff in error, is, he might elect to avoid it within a reasonable time.  That reasonable time, in my opinion, is to be measured by the peculiar circumstances then existing.  He ought not to be allowed delay to specu-

late upon the probabilities of the future market, and redeem, or not, as might seem to him most profitable. Nor ought he to be allowed thereby to add burdens upon the bank in the shape of additional unpaid taxes and assessments.

Mr. JUSTICE DICKEY: I concur in the views of Mr. Justice SCHOLFIELD.