ELLIOTT CALLENDER, ETC.,

v.

SARAH G. ROBERTS ET AL.

USURY.—Brokers negotiating loans of other people's money may charge the borrower commissions without thereby making the loan at the full rate of legal interest usurious, where there is no arrangement with the lender that commissions shall be charged by the agent.

APPEAL from the Circuit Court of Tazewell county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed December 4, 1885.

Mr. WILLIAM DON MAUS, for appellant; that it was not usury, cited Palmer v. Call, 12 Reporter, 194; Daywell v. Wigley, 11 East, 43; Salarte v. Melville, 7 B. & C. 430; Coster v. Delworth, 8 Cow. 299; Condit v. Baldwin, 21 N. Y. 219; Smith v. Marvin, 27 Ib. 137; Bell v. Day, 32 Ib. 165; Baxter v. Buck, 10 Vt. 548; Muir v. Savings Inst., 16 N. J. Eq. 537; Conover v. Van Mater, 18 Ib. 486; Rogers v. Buckingham, 33 Conn. 81; Hopkins v. Baker, 2 P. & H., (Va.) 110; Barrett v. Snowden, 5 Wend. 181; Gokey v. Knapp, 44 Ia. 32; 17 Albany Law J. 116; Manning v. Young, 28 N. J. Eq. 568; White v. Dwyer, 31 Ib. 40; Estevez v. Purdy, 66 N. Y. 446; Stout v. Rider, 12 Hun, 574; Brigham v. Myers, 51 Ia. 397; Omaha Hotel Co. v. Young, 97 U. S. 13; Hoyt v. Pawtucket Inst., etc., 110 Ill. 390; Ballinger v. Bourland, 87 Ill. 513; Cox v. Mass. Life Ins. Co., Chicago Legal News, No. 33, p. 271.

Mr. B. S. PRETTYMAN, for appellees; cited Payne v. Newcomb, 100 Ill. 611; Omstead v. N. E. Mfg. Co. 11 Neb. 487; N. E. Mfg. Co. v. Hendrickson, 15 C. L. J. 132; Philo v. Butterfield, 3 Neb. 256; Chany v. White, 5 Neb. 261; Chany v. Woodruff, 6 Neb. 151.

PLEASANTS, J. Appellees are the widow, heirs and admin_

istrator of Caesar A. Roberts, who, with said Sarah G., his wife, on Sept. 13, 1873, executed a deed of trust of his residence property in Pekin to Wm. H. Robinson as trustee, and naming appellant as his successor in case of his death, to secure a mortgage bond of said Roberts of that date to Dana D. Dickinson for $2,500, due in five years, with interest until paid at ten per cent. per annum, payable semi-annually, on the first days of December and June of each year, with coupons for the same attached.

Robinson died in 1880 and Roberts in October, 1883. This bill was filed December 15, 1883, to foreclose said deed, claiming as due and unpaid the whole of said principal sum and interest thereon from December 1, 1883, together with $25 for premium paid on a policy of insurance, and $125 for attorney's fees under the provisions thereof.

The widow and heirs answered, setting up the defense of usury and payment; that no money was advanced or loaned to said Roberts at the time of the execution of said papers; that he received from Robinson, as the agent of Dickinson, $1,500 on September 15th, $500 on October 9th, and $360 on November 7th, all in 1873, and no more; that $140 were usuriously retained by Robinson as agent, and with the knowledge and consent of Dickinson; and that the whole of said principal sum had been paid. Upon the pleadings and proofs the bill was dismissed, and complainant appealed.

The evidence shows that Dickinson was a resident of Williamsville, Vt., and that having learned from Malcolm Moody, assistant treasurer of the Vermont Savings Bank of Brattleboro, that said bank was loaning money at different points in the Western States, he intrusted to him $2,500, to be loaned for said Dickinson; that Moody sent the same to Robinson & Callender, loan brokers at Peoria, Ill., for that purpose; that the loan in question was made by Robinson to Roberts, and the bond, coupons and trust deed, together with the application by said Roberts for the loan, were sent to Moody, who delivered them to Dickinson; that the interest was paid to Robinson until his death and by him remitted to Moody, who paid it over to Dickinson, and that after his death it was paid

to Callender and Ayres, successor to the business of Robinson and Callender, and by them remitted directly to Dickinson.

Assuming that Robinson retained the amount for commissions as alleged, there is no reliable evidence that in so doing he acted as the agent of Dickinson, or that Dickinson expected it would be done, or knew it had been until long after, or ever ratified or in any way became responsible for it. Even supposing that Robinson was his general agent in making the loan, any presumption from that fact that he knew usury would be or was taken was fully overcome by the testimony of Moody. Excluding all of that testimony that was objected to as hearsay or as a conclusion of the witness, the inference from what is clearly competent is irresistible that Dickinson had no acquaintance or correspondence, nor any dealing directly or indirectly with Robinson or Robinson and Callender until long after the loan was made; and the facts are established with reasonable certainty that until he received the papers from Moody he had no reason to know or suspect that his money would be loaned by him or them, or in Illinois, or for any particular rate of interest. He stipulated for nothing of the kind, suggested no rate or minimum of interest, nor any place or agency for the transaction of the business; nor is there any evidence that Moody or the bank of which he was an officer had ever received or taken, through their broker or others, directly or indirectly, by way of commissions to such agents, or otherwise, any usurious interest whatever.

But it is said that Dickinson ratified the acts of Robinson after full information of them. A letter from Roberts to him of August 9, 1883, and his answer thereto of August 20th, were produced and relied on as establishing this fact.

That letter inclosed one from Callender and Ayres to Roberts of July 12, 1883, advising him that the loan wou'd mature in September then next and that some change in it would have to be made, and that if he could not then pay it in full they would take $1,000 on account and extend the remainder for five years at eight per cent. with the option of payment at any time within that period. Referring to their letter, Roberts, in his, recites the terms of the loan as first made and states:

"When Robinson and Callender came to pay me the money they deducted five per cent., $125, as commission and fifteen dollars for making papers, etc.;" that he had paid the interest regularly—the last in June preceding, when nothing was said by them about paying the principal; that their letter inclosed took him by surprise and he felt it a hardship to be brought up on such short notice face to face with terms he could not meet; and proceeding as follows: " I have done all the business with your said agents, taking it for granted that you were at all times advised of and satisfied with what they did. They gave me the money, took the commissions or rather retained them out of the money, collected the interest, received the insurance policies, and now propose to collect the money, which I supposed had all been done with your knowledge, consent and approbation. How is that, and will you now authorize them to make such further terms with me in regard to the matter as we can agree upon? Please let me hear from you at your earliest convenience." The answer was as follows: " Your letter of August 9th at hand, and the statement you make relative to the loan is correct. Also that the interest has been paid promptly. All this I admit, and have allowed the loan to remain five years since it was due, by your promptness; but now I am in want of the money and wrote to Callender and Ayres (I think in June) to that effect. I would like the whole amount ($2,500) but if it is not convenient for you to pay it all now, will comply with proposition Callender and Ayres made you; that is, pay me $1,000 of the loan and the balance to extend five years longer, with the present security, at eight per cent. interest, etc. If you can pay it all now it will oblige me much."

Roberts was a practicing lawyer. He caused his letter to be carefully copied, the copy to be carefully compared with the original and the latter to be duly stamped and mailed by a third party. Dickinson was a lumber dealer. To him the points of that letter from Roberts would appear to be the writer's surprise at the demand for payment of the principal on such short notice and its consequent hardship, his claim to indulgence in view of his past promptness in respect to the interest, and his

understanding that Callender and Ayres were acting under his instructions in making the demand and would not be likely to extend the desired indulgence without his express authority, which was therefore asked.

The brief statement about the charge for commissions and making the papers appears to be unimportant of itself, incidentally made and so overlaid by the other matter as to make but little or no impression and call for no specific answer. Apart from other evidence the general admission in his reply is far from having a clear reference to it, and under the circumstances, we are satisfied, had none at all. The supposition of Roberts, as stated, was that Dickinson had been "at all times advised of and satisfied with what they did;" that it "had all been done with his knowledge, consent and approbation." If, by fair construction, the admission, of itself alone, might be taken to include the retention of commission or the delay of delivery of the money by Robinson, it was such an admission as might be explained or shown to have been erroneous in fact; and it was so shown by the testimony of Moody. He was not advised of these acts of Robinson at the time and did not approve or consent to them. Nor did Moody, so far as appears. Hence the inference that in his letter he really did not refer to them and therefore did not thereby ratify them. He knew nothing of the transactions except what was disclosed by the papers, nor did he give any directions in advance as to what should be done. For anything that appears all his expectations would have been as well satisfied if the loan had been made in Ohio or Nebraska, or at eight per cent. to him. He merely left his money with Moody to be loaned, without any suggestion as to place, agents, form of security, or rate of interest, and the circumstances show no reason for his supposing that Moody would ask, authorize or consent to the taking of usury.

The proof is that Roberts desired the loan for the purpose of improving the premises described, and made the application for it; that Robinson went from Peoria to Pekin to examine the property, and sent the application to Moody, who forwarded the money without further information or direction or

subsequent knowledge of the terms made, beyond what the papers showed.

If Dickinson was ever informed of the detention or receipt by Robinson from Roberts of the $140 or any other sum, the presumption would be that he supposed it was in consideration of services rendered to Roberts ; and further that all the money loaned was the money of Roberts from the time of the execution of the papers, absolutely, and not upon condition as in the case of Hewitt v. Dement, 57 Ill. 500, and that if the $2,360 or any part of it was not delivered until afterward and as the improvements were made, it was kept by Robinson with the consent and for the convenience of Roberts. There is no evidence or presumption it was done by any arrangement with Dickinson or with his sanction or knowledge, or for his benefit, directly or indirectly.

Thus the case is clearly different from that of Payne v. Newcomb, 100 Ill. 611. Brokers negotiating loans of other people's money may charge the borrower commissions without thereby making the loan at the full rate of legal interest usurious, where there is no arrangement with the lender that commissions shall be charged by the agent. Hoyt v. Pawtucket Institution for Savings et al., 110 Ill. 390. And in a later case from which this can not be distinguished in principle, the facts being substantially alike, the Supreme Court held there was no usury. Cox v. Mass. L. M. C., 113 Ill. 382. (Advance sheets.)

For these reasons we are of opinion it was error to dismiss the bill, and the decree of the circuit court is therefore reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.