MARGARET A. HALDEMAN ET AL.

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY.

*Usury—Broker's Commissions—Foreclosure—Solicitor's Fees—Practice —Objection not Raised Below.*

1. It is a well established rule in this State that brokers, in negotiating loans of the money of others, may charge the borrower commissions without thereby making a loan at the full rate of legal interest usurious.
2. Upon the foreclosure of a mortgage the decree may include a solicitor's fee if the mortgage so provides.
3. An objection not raised in the court below may be ignored by this court.

[Opinion filed August 26, 1886.]

IN ERROR to the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Mr. THOMAS F. TIPTON, for plaintiff in error.

Mr. A. E. DeMANGE, for defendant in error.

" The fact that an agent without the authority, knowledge or consent of his principal upon loaning the money of the latter exacts from the borrower a sum in excess of the lawful interest does not make the loan usurious." Cox v. Mass. Mut. L. Ins. Co., 113 Ill. 382; Phillips v. Roberts, 90 Ill. 492; Hoyt v. Pawtucket, 110 Ill. 390.

There is no principle of law which requires that an individual or corporation having money to loan should be compelled to refuse an application offered it because the broker sending the application may charge the applicant a commission for his services. So long as there is no agreement between the loaner and broker—no actual knowledge—the transaction can not be usurious. Hoyt v. Pawtucket, 110 Ill. 390; Payne v. Newcomb, 100 Ill. 611.

The objection to the allowance of solicitor's fees can not be raised here for the first time. K. & I. R. R. R. Co. v. Chester, 62 Ill. 235; Elgin v. Kimball, 90 Ill. 356; R., R. I. & St. L. R. R. v. Beckemeier, 72 Ill. 267.

Parties are concluded by the master's report where no exceptions are interposed. Jewell v. Rock River Paper Co., 101 Ill. 57; Pennell v. Lamar Ins. Co., 73 Ill. 303.

WALL, J. The principal question in this case is whether the transaction disclosed a violation of the statute against usury.

It appears that Tillotson and Waite and Tillotson and Fell were engaged in the business of insurance agents and loan brokers in the city of Bloomington. The appellee, an insurance company whose home office is in the State of Massachusetts, made these men their agents for insurance at Bloomington and frequently furnished them with money to be loaned in that locality.

It was customary for one wishing to borrow money to make an application containing the necessary information as to the proposed security, etc., etc., and if the application was approved by the company the money would be forwarded to the

broker who would pay it over to the borrower, less the commission which had been agreed on by the borrower and the broker at the beginning. It did not appear that the lender had anything whatever to do with this matter of commission, nor does it even appear that he knew of it in any instance. Of course it would be presumable in such a case that the broker was to be compensated by the borrower. The business was thus conducted for years, money being furnished repeatedly by the appellee and by other parties having money to loan upon such applications, the lender in no instance paying anything for the services of the broker. Such a transaction occurred when the debt involved here was originally contracted, and when it matured a renewal was effected through these brokers for which they made a charge, which also was paid by the borrower, but so far as shown by the evidence without the knowledge of the lender.

The appellants now testify that they considered the brokers to be not their agents but the agents of the appellee. On the other hand the brokers and the executive officers of the company testify that the brokers were understood to be the agents of the borrowers.

We think the evidence fully justifies the latter view, and that it is quite consistent with common experience and observation. The broker might be the agent of one or the other, or of both parties, and in conducting a negotiation resulting in a loan he would naturally be trusted and depended upon to some extent by both.

For example, if he is the agent of the borrower, the lender might not hesitate to send him the money direct and rely upon him to see that all the formalities necessary to render the loan legal and the security binding were complied with according to law.

In such a case it would be an unreasonable stretch to say that the lender had received some incidental service which he had not paid for but which the broker was willing to perform because of his commission which was paid by the borrower, and therefore the transaction was tainted with usury. While the courts have ever held that no shift or device to evade the

Haldeman et al. v. Massachusetts Mutual Life Insurance Co.

laws against usury can be tolerated, yet this statute is to be administered according to its spirit and interest and to reach the object which the Legislature designed to accomplish.

The history of such laws shows many differences of opinion as to the ground upon which and the purposes for which they have been enacted. One writer has said that a host of great names from Aristotle to Potier might be cited who rank all interest of money under the name of usury, and condemn it, but the sense of mutual benefit has on this point resisted with equal firmness the decrees of the church and the speculations of philosophers, and a regulated and reasonable interest has had the sanction not only of our own municipal law, but of the most cultivated and enlightened human reason. Lord Bacon, in discussing the subject, concludes that two things are to be reconciled, " the one, that the tooth of usury be grinded, that it bite not too much ; the other that there be left open a means to invite moneyed men to lend for the continuing and quickening of trade." It is a justification for such laws that according to all experience unlimited usury leads to unlimited oppression, and that the extortion of the creditor and the resistance of the debtor tend to produce an unhealthy condition of trade and business, and no other will perhaps be generally accepted at the present day. It is purely a question of policy and expediency to be determined from the standpoint of the public good. The law, then, fixes the rate which must not be exceeded and will permit no evasion, but it will not be captious, and anxious to infer a design to evade where none existed, nor will it ingeniously build up a superstructure of usury upon an unsubstantial foundation. It is a well established rule in this State that brokers negotiating loans of other people's money may charge the borrower commissions without thereby making a loan at the full rate of legal interest usurious. Ballinger v. Bourland, 87 Ill. 513; Phillips v. Roberts, 90 Ill. 492; Boylston v. Bain, 90 Ill. 283; Hoyt v. Pawtucket Ins. Co., 110 Ill. 390; Cox v. Mutual Ins. Co., 113 Ill. 382; Callender v. Roberts, 17 Ill. App. 539.

The case at bar is in its facts very much like the case of Cox v. M. I. Co., 113 Ill. 382, and what is there said is strongly in point, if not absolutely controlling here.

There was no error in the decree upon this point. It is assigned as error that the decree includes the sum of $100 for the solicitor's fee of complainant which is taxed as a part of the cost of the case. The mortgage contains a clause expressly authorizing this to be done. It provides that "it (fee $100) shall be added to, and become a part of the debt hereby secured to be included as a part of the judgment or decree, or to be taxed as a part of the costs of such suit, as the court may elect."

A similar provision was held sufficient to support the decree in Dana v. Rodgers, 43 Ill. 260, and there seems to be no reason why the stipulation may not be enforced according to its terms. See also Ball v. Miller, 38 Ill. 110.

It does not appear, however, that this objection was made specifically in the answer, or that by any other appropriate mode it was brought to the attention of the court below, although the claim was distinctly made in the bill.

Therefore, if the objection were tenable, it might well be held that it could not be presented here for the first time.

The decree will be affirmed.

*Affirmed.*